# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

KEVIN DARRAH,
    Petitioner,

vs.

WARDEN, MADISON
CORRECTIONAL INSTITUTION,
    Respondent.

Case No. 1:09-cv-906

Dlott, C.J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Petitioner, an inmate in state custody at the Madison Correctional Institution, has filed a

petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court

on the petition (Doc. 1); respondent's return of writ (Doc. 8); and petitioner's traverse. (Doc.

12).

## I.  FACTUAL BACKGROUND

The Ohio Court of Appeals, Twelfth Appellate District, provided the following summary

of the facts that led to the indictment and petitioner's conviction and sentence:[1]

> {¶2} A.T.'s mother was acquainted with appellant through work. When A.T. and
> her mother moved into a new home, appellant offered to assist them. The move
> occurred on Saturday, February 25, 2005. After moving furniture, appellant
> ordered pizza to be delivered to the new home. A.T.'s mother needed to retrieve
> some additional items from her prior residence, so appellant offered to stay at the
> new home to wait for the pizza. A.T., then five years old, was hungry and wanted
> to stay at the new house to eat pizza. Appellant agreed to stay with her at the new
> house while A.T.'s mother continued moving.

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a
person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court
shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Because
petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual
findings quoted herein, the state appellate court's factual findings are presumed to be correct. *See McAdoo v. Elo,*
365 F.3d 487, 493-94 (6th Cir. 2004).

{¶3} A.T. testified at trial that, while her mother was gone, she and appellant played hide and seek. When she became tired, the two lay down on the bed. A.T. testified that appellant bit her ear and kissed her on the lips. She testified that he then unzipped her pants and stuck his fingers in her "butt."

{¶4} A.T.'s mother testified that on Sunday morning during their shower, A.T. complained that soap touching her genital area hurt because she was sore. A.T. told her mother that appellant had touched her and hurt her. When A.T.'s mother examined A.T., she discovered that the area around A.T.'s vagina was red and inflamed. She testified that she observed a "blood bruise" on A.T.'s hip. A.T.'s mother called A.T.'s pediatrician, and was advised to bring A.T. to an appointment on the next day, Monday.

{¶5} At the appointment, A.T. was examined by Dr. Deborah Goodlander. Goodlander testified that, during the appointment, she questioned A.T. about what had happened, and A.T. reported to her that someone named Kevin had hurt her with his finger. When Goodlander asked A.T. where she was hurt, A.T. pointed to her labia. When Goodlander examined A.T.'s genitals, she observed unusual pinpoint redness at the vaginal opening. Goodlander testified that the injury was consistent with injury that would have been caused by a fingernail.

(Doc. 8, Ex. 12, pp. 1-2).

## II.   PROCEDURAL HISTORY

### State Trial and Appellate Proceedings

On March 27, 2006, the Warren County, Ohio grand jury returned an indictment charging petitioner with one count of rape, in violation of Ohio Rev. Code § 2907.02(A)(1)(b), with specification, and one count of gross sexual imposition, in violation of Ohio Rev. Code § 2907.05(A)(4). (Doc. 8, Ex. 1). Through counsel, petitioner entered a plea of not guilty to all counts. (Doc. 8, Ex. 2).

After a jury trial, petitioner was found guilty of rape with the specification that the victim was a child under the age of ten. (Doc. 8, Ex. 3). The count of gross sexual imposition was amended to a lesser included offense and was not considered because the jury convicted

petitioner of rape. (Doc. 8, Ex. 4). On September 22, 2006, petitioner received a life sentence. (Doc. 8, Ex. 5).

On September 22, 2006, through counsel, petitioner filed two motions. First, petitioner filed a motion for acquittal on the basis that there was insufficient evidence to sustain a conviction. (Doc. 8, Ex. 6). Second, he filed a motion for a new trial, arguing that the trial court's denial of his request to view and inspect the interview of the victim and finding that the victim was competent to testify were erroneous and prejudicial to his case. (Doc. 8, Ex. 7). The trial court denied both motions. (Doc. 8, Ex. 8 & Tr. 7-8).

Through counsel, petitioner filed a timely appeal to the Ohio Court of Appeals (Doc. 8, Ex. 9), setting forth three assignments of error:

1. The trial court erred and abused its discretion in admitting the testimony of [A.T.] because she was not competent to testify.

2. The trial court erred in not permitting Beth Gress to testify as to her training, experience and education.

3. The trial court erred and abused its discretion in not allowing the defendant to view the videotaped interview of [A.T.].

(Doc. 8, Ex. 10). On December 28, 2007, the Ohio appellate court affirmed the judgment of the trial court. (Doc. 8, Ex. 12).

## Application to Reopen Appeal

On March 27, 2008, through different counsel, petitioner filed a timely application to reopen his appeal pursuant to Ohio App. R. 26(B). (Doc. 8, Ex. 13). Petitioner argued that his appellate counsel was ineffective because he failed to raise the following assignments of error:

1. The trial court erred when it admitted evidence of Darrah's silence, where Darrah's silence was premised on his counsel's advice, and occurred after he had been indicted and arrested for rape. Fifth and Sixth Amendments, United States Constitution; Section 10, Article I, Ohio Constitution.

2. Darrah was deprived of his right to the effective assistance of trial counsel. Sixth and Fourteenth Amendments, United States Constitution; Section 10, Article 1, Ohio Constitution.

(Doc. 8, Ex. 13). On June 19, 2008, the Ohio appellate court granted petitioner's application to

reopen his appeal. (Doc. 8, Ex. 16).

On July 25, 2008, petitioner raised the following assignment of error in his reopened

appeal:

It was error to permit evidence of Darrah's silence, where Darrah's silence was premised on his counsel's advice and occurred after he had been arrested and indicted for rape.

First Issue Presented for Review and Argument:
The prosecutor told the trial court she would rebut Darrah's testimony regarding his pre-arrest contacts with the detective. But the prosecutor asked the detective to comment on Darrah's post-arrest, post-indictment silence. Darrah says this was unconstitutional and that his appellate counsel was ineffective for failing to raise the issue. Is he right?

Second Issue Presented for Review and Argument:
Darrah obtained counsel who advised him to remain silent. After indictment, Darrah stood upon counsel's advice. He never waived counsel. At trial, the detective testified that Darrah stood mute when he was arrested and presented with the indictment's allegations. Darrah says that this violated his 6th Amendment right-to-counsel and that his appellate attorney was ineffective for failing to raise the issue. Is he right?

(Doc. 8, Ex. 17). On December 22, 2008, the court of appeals affirmed the judgment of

the trial court. (Doc. 8, Ex. 20).

**Ohio Supreme Court**

Petitioner, through counsel, filed a timely appeal to the Ohio Supreme Court on February

5, 2009. (Doc. 8, Ex. 21). In his memorandum in support of jurisdiction, petitioner raised the

following propositions of law:

4

I.     It violates the self-incrimination and right-to-counsel clauses of the constitution for the state to use a defendant's post-arrest, post-indictment, pre-*Miranda* silence as substantive evidence of guilt.

II.    The state may use a defendant's post-arrest, pre-*Miranda* silence as impeachment only where it relates to the defendant's credibility and where the silence is sharply contrasting or inconsistent with the testimony to be impeached.

III.   The state is prohibited from using evidence of a defendant's silence for any purpose if it was obtained after the 6th Amendment's right to counsel has attached.

IV.    A defendant's silence in response to an official accusation is inadmissible because it lacks probative value.

V.     In deciding if counsel was ineffective, a court must examine if the attorney's performance was based on trial strategy and, further, if the trial strategy itself was deficient.

VI.    In evaluating whether a defendant has been prejudiced by counsel's defective performance, the court must assess the strength of the state's case, and must not require a higher magnitude of error where the overall evidence of guilt is tepid.

(Doc. 8, Ex. 22). On June 3, 2009, the Ohio Supreme Court denied leave to appeal and dismissed the appeal "as not involving any substantial constitutional question." (Doc. 8, Ex. 24).

### Federal Habeas Corpus

Petitioner filed the instant habeas corpus petition on December 15, 2009. (Doc. 1). He alleges the following grounds for relief:

I.     Darrah was denied the effective assistance of counsel under the Sixth and Fourteenth Amendments:

i) because his trial and appellate attorneys failed to object to the state's use of post-arrest, post-indictment, post-counsel, pre-*Miranda* silence as substantive evidence of guilt.

II.    The appellate court's determination that the state's use of Darrah's post-arrest, post-indictment, post-counsel, pre-*Miranda* silence was for

impeachment purposes was an unreasonable determination of the facts in light of the state court record.

(Doc. 1, p. 2).

Respondent opposes the motion. (*See* Doc. 8). In the return of writ, respondent contends that defense counsel presented the facts of petitioner's pre-and post-arrest silence as a trial tactic to emphasize petitioner's innocence and that the prosecution subsequently referenced petitioner's silence to impeach his credibility. (Doc. 8, pp. 8-11). Furthermore, respondent argues that the Ohio Court of Appeals' decision correctly identified *Strickland v. Washington*, 466 U.S. 668 (1984), as the appropriate constitutional standard for evaluating ineffective assistance of counsel claims and applied the standard reasonably. (Doc. 8, pp. 38-40).

In his traverse, petitioner argues that the Ohio Court of Appeals' decision altered and misapplied the *Strickland* standard. (Doc. 12, p. 2). On this basis, petitioner contends that no deference is due the state court's decision and his ineffective assistance of counsel claims should be reviewed *de novo*. (Doc. 12, pp. 4-5). Petitioner claims that his appellate counsel's performance was objectively unreasonable for failing to raise the claim regarding the "silence-as-evidence issue" and that he was prejudiced as a result.[2] (Doc. 12).

---

[2] Although petitioner's traverse focuses solely on his ineffective assistance of appellate counsel claim, his habeas petition challenges trial and appellate counsels' failure to object to the substantive use of post-arrest, pre-*Miranda* silence. (*See* Docs. 1 & 12). In his application to reopen and in his reopened appeal, petitioner also appears to argue that his appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness for failing to object to the substantive use of petitioner's post-arrest silence. (*See* Doc. 16; *see also* Doc. 12, p. 3 ("Additionally, Darrah's claim was that his *appellate counsel* was ineffective for failing to argue his trial counsel's ineffectiveness.") (emphasis in original)). Accordingly, the Court will construe petitioner's habeas petition and traverse as raising claims of ineffective assistance of trial and appellate counsel for failing to object to the substantive use of post-arrest, pre-*Miranda* silence and ineffective assistance of appellate counsel for failure to raise trial counsel's alleged ineffectiveness on appeal.

## III. THE PETITION SHOULD BE DENIED BECAUSE PETITIONER'S GROUNDS FOR RELIEF ARE WITHOUT MERIT.

In this federal habeas case, the applicable standard of review governing the adjudication of the constitutional issues that were raised to and decided by the Ohio courts is set forth in 28 U.S.C. § 2254(d). Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000)). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599-600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600. As the Sixth Circuit recently explained in *Otte*:

Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* __ U.S. __, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court). It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable. . . .* This is a "substantially higher threshold.". . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington,* 131 S.Ct. at 786. In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

The Supreme Court recently made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher,* __ S.Ct. __, No. 10-637, 2011 WL 5335411, at *3-4 (U.S. Nov. 8, 2011); *cf. Otte,* 654 F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court

8

must "look to Supreme Court cases already decided at the time the state court made its decision"). In *Greene*, *supra*, 2011 WL 5335411, at \*3, the Court explained:

> [W]e held last term in *Cullen v. Pinholster*, 563 U.S. __, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits. We said that the provision's "backward-looking language requires an examination of the state-court decision at the time it was made." *Id.*, at __, 131 S.Ct. at 1398. The reasoning of *Cullen* determines the result here. As we explained, § 2254(d)(1) requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions *as of 'the time the state court renders its decision.'" Id.*, at __, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71–72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003); emphasis added).

Decisions by lower courts are relevant "to the extent [they] have already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010), *cert. denied*, __ S.Ct. __, 2011 WL 4530517 (U.S. Oct. 3, 2011) (No. 10-9911)). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins*, 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams*, 529 U.S. at 412).

The Supreme Court precedent setting forth the clearly-established federal legal principles applicable to the case-at-hand is *Strickland v. Washington*, 466 U.S. 668 (1984). In order to demonstrate that counsel's performance was constitutionally ineffective, petitioner must show: (1) his counsel made such serious errors that he was not functioning as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced the defense by undermining the reliability of the result. *Id.* at 687. Under the first prong of the *Strickland* test, petitioner must demonstrate that his counsel's representation fell below an objective standard of

reasonableness based on all the circumstances surrounding the case. *Id.* at 688. "A court

considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's

representation was within the 'wide range' of reasonable professional assistance." *Harrington,*

131 S.Ct. at 787 (citing *Strickland,* 466 U.S. at 689). Under the prejudice prong of the *Strickland*

test, petitioner must show "a reasonable probability that, but for his counsel's unprofessional

errors, the result of the criminal proceedings would have been different. A reasonable

probability is a probability sufficient to undermine confidence in the outcome of the proceeding."

*Id.* (citing *Strickland,* 466 U.S. at 694). A court may dispose of an ineffective assistance of

counsel claim by finding that petitioner made an insufficient showing on either ground. 466 U.S.

at 697.

   The Ohio Court of Appeals was the last state court to render a reasoned decision

addressing the merits of petitioner's ineffective assistance of counsel claims. In overruling the

assignments of error, the state appellate court made the following findings:

  {¶3} On March 27, 2008, appellant filed an application to reopen his appeal,
arguing that his appellate counsel failed to properly assign as error constitutional
violations that allegedly occurred at trial. This court granted appellant's motion
to reopen his appeal, and appellant raises the following assignment of error.

  {¶4} "IT WAS ERROR TO PERMIT EVIDENCE OF DARRAH'S SILENCE,
WHERE DARRAH'S SILENCE WAS PREMISED ON HIS COUNSEL'S
ADVICE, AND OCCURRED AFTER HE HAD BEEN ARRESTED AND
INDICTED FOR RAPE."

  {¶5} Appellant argues that the state improperly elicited testimony from an officer
regarding appellant's post-arrest, post-indictment silence in violation of his
constitutional rights. Further, appellant argues that his appellate counsel was
ineffective for failing to raise these issues in his direct appeal.

  {¶6} In determining whether appellate counsel's performance constitutes
ineffective assistance, we must determine whether counsel's actions fell below an
objective standard of reasonableness and that appellant was prejudiced as a result.
*Strickland v. Washington* (1984), 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052;

*State v. Sheppard*, 91 Ohio St.3d 329, 2001-Ohio-52. To show ineffective assistance, appellant must prove that appellant counsel was deficient for failing to raise the issues he now presents, and that there was a reasonable probability of success had he presented those claims on appeal. *Sheppard* at 329, citing *State v. Bradley* (1989), 42 Ohio St.3d 136, paragraph three of the syllabus.

{¶7} In general, a defendant's post-arrest silence cannot be used against him. *Doyle v. Ohio* (1974), 426 U.S. 610, 96 S.Ct. 2240. "[P]ost-arrest silence is inherently ambiguous since the silence may reflect only the defendant's exercise of his constitutional right to remain silent. * * * Any comment which infers that the defendant is guilty because he remained silent subverts the guarantees afforded him by the Fifth Amendment of the Constitution of the United States." *State v. Willis*, Cuyahoga App. No. 90956, 2008-Ohio-6156, quoting *State v. Williams* (1979), 64 Ohio App.2d 271, 276.

{¶8} In addition, "the use of pre-arrest silence as substantive evidence of guilt is an impermissible burden upon the exercise of the Fifth Amendment privilege." *State v. Leach*, 102 Ohio St.3d 135, 139, 2004-Ohio-2147, ¶28, citing *Combs v. Coyle* (C.A.6, 2000), 205 F.3d 269, 285. However, the *Leach* court also distinguished the use of pre-arrest silence for impeachment purposes and held:

{¶9} "When a defendant testifies at trial, the defendant has cast aside his cloak of silence. Thus, use of pre-arrest silence as impeachment evidence is permitted because it furthers the truthseeking process. Otherwise, a criminal defendant would be provided an opportunity to perjure himself at trial, and the state would be powerless to correct the record. But using a defendant's prior silence as substantive evidence of guilt actually lessens the prosecution's burden of proving each element of the crime and impairs the sense of fair play underlying the privilege." *Leach* at ¶33. (Internal citations omitted.)

{¶10} According to the record, there was testimony at appellant's trial regarding both appellant's pre-arrest and post-arrest silence. Appellant testified in his own defense, and the following transpired during appellant's direct examination:

{¶11} "Defense counsel: When was the first time that you became aware of these allegations?

{¶12} "Appellant: It was kind of a strange event, the way that it happened. I got an initial call from Detective [James] Engelhardt * * *. I'm sorry, I can't even remember the date now. My mind has gone blank. But this one evening, we came home from work and there was a message on my answering machine from Detective Engelhardt, that he was working on a case and that he needed to talk with me, and he asked me to call him as soon as possible the next day. So at that point, I didn't know what it was about. * * * I assumed that it had maybe something to do with a [Court Appointed Special Advocate] case that I worked

with previously. * * * And so at that point I thought well maybe it had to do with a child * * *. So what I did was, the next day, I called Detective Engelhardt's office and I left him a message. He wasn't there at the time * * * So then I think it was later that day he called me * * * back, and that's when he informed me that there were some criminal allegations that had been filed against me. And I mean * * * at that point I was floored. I was shocked. I still didn't know what it was that these criminal allegations were.

{¶13} "And he asked me at that time if I would come in and make a statement. And initially I agreed with him and we actually did set up a time for me to come in and make a statement. But when I got off the phone, I felt that, because * * * he did say it was of a criminal nature, then I thought it was best that I do talk to an attorney to get some advice, about * * * what to do to make sure that * * * I was protecting my rights, and just [get] as much advice as possible, because I had never been in this situation before.

{¶14} "So what I did is I called another attorney who * * * is handling a civil case of ours, and I asked his advice. And he advised me that I was under no obligation, by law, to go in and make any kind of statement. And he advised me that it would be best not to go in unless I had an attorney present.

{¶15} "Well at that time I didn't have a criminal attorney or anything like that. So * * * I called Detective Engelhardt back and I told him that I was not going to come in and make a statement at that time, based on the advice of this attorney * * *. Detective Engelhardt then, at that point, told me what the allegations were. * * * I said I don't even know what I'm being charged with. And it was at that point that he said that I had inappropriately touched a child.

{¶16} "And it is so hard to describe just how floored [and] shocked I was at that point, that * * * I was being * * * accused of something like this. And I was so stunned, I just [said] okay.

{¶17} "And then he * * * asked me again, he said, 'So are you or are you not going to come in?' And I said no, that I was not going to come in.

{¶18} "And at the end of the conversation he said, 'Okay. Well, there will be indictments that will be forthcoming.' And that was the end of the conversation at that point."

{¶19} The state then cross-examined appellant, where the following transpired:

{¶20} "Prosecutor: When did you find out [the identity of the victim]?

{¶21} "Appellant: I'm sorry, I cannot remember.

{¶22} "Q: You have no idea?

{¶23} "A: I'm trying to remember when it was that I was officially told. And I want to say it was when I was arrested.

{¶24} "Q: Isn't it fair to say that it didn't matter when you were told because you already knew?

{¶25} "A: No, that's not fair to say, because I did not know."

{¶26} Appellant's counsel then asked appellant on redirect examination if appellant was informed of the nature of the charges at some point in time between the time he was arrested and the time he was booked in jail, and appellant responded affirmatively.

{¶27} The state later called Detective Engelhardt as a rebuttal witness, and the following transpired:

{¶28} "Prosecutor: [When] was the first attempt [you made to contact appellant]?

{¶29} "Witness: On Monday, the 6th of March, I left a phone message at his house."

{¶30} "* * * .

{¶31} "Q: And what was the next contact with [appellant]?

{¶32} "A: The next contact was the 7th, which was a Tuesday. I received a call, and [appellant] and I spoke. I told him that I had a case I was investigating in reference to a complaint that had come from [Alice T.], and I needed to talk to him about that and I would like to schedule an interview with him.

{¶33} "Q: Okay. So you specifically mentioned Alice [T's] name when you talked to him on March 7th?

{¶34} "A: Yes, ma'am.

{¶35} "Q: Did you say that it regarded Alice's daughter?

{¶36} "A: No, ma'am.

{¶37} "Q: Did you give any indication of the nature of the complaint?

{¶38} "A: No, ma'am, I did not.

{¶39} "* * *

{¶40} "Q: Did he ask in any way what the allegation was about?

{¶41} "A: No, ma'am, he never did.

{¶42} "Q: Okay. And when was the next contact with him?

{¶43} "A: I believe it was an hour, maybe two hours later, I received a call from him and he said he had spoken with [an] attorney, and that on the advice of that attorney, he was not going to come in and give a statement.

{¶44} "* * *

{¶45} "Q: Okay. And so finally, on March 27th, you then went and made an arrest?

{¶46} "A: That's correct.

{¶47} "Q: * * * Did * * * he receive the indictment that was filed against him?

{¶48} "A: Yeah, we gave him a copy when [we booked] him in at the jail.

{¶49} "Q: Okay. And have you had an opportunity through your career to see indictments for child sex offenses?

{¶50} "A: That's correct.

{¶51} "Q: And is it a practice that the child's name is not listed in the indictment?

{¶52} "A: That's correct, they're never listed.

{¶53} "Q: Okay. And is there any reference at all to who the specific child is?

{¶54} "A: Not on the indictment.

{¶55} "Q: Do you recall, on that date, did you talk to him about the specifics of the offense?

{¶56} "A: No, ma'am. I had no conversation with him other than processing him into the jail. There was no discussion of the case at all.

{¶57} "Q: He didn't say, 'Who is this about; I have no idea what this is about?'

{¶58} "A: No, ma'am.

14

{¶59} "Q: Nothing?

{¶60} "A: (Shaking head negatively)."

{¶61} According to the record, it was appellant who first raised the issue of his knowledge of the allegations against him and his reactions upon discovering these allegations. When appellant testified in his own defense, he stated that he was "floored" and "shocked" over the allegation that he had inappropriately touched a child, and that he only discovered the child's identity upon receiving the indictment at the jail. Based on this testimony, the state was permitted to present a rebuttal witness to impeach appellant's credibility. *See Leach*, 2004-Ohio-2147, ¶33.

{¶62} Appellant argues that Det. Engelhardt's testimony went beyond impeachment of appellant's credibility, and that the detective's testimony also referenced appellant's *post-arrest* silence. The record indicates that while the state first asked Det. Engelhardt whether appellant inquired as to the nature of the charges on the date of the arrest, appellant's trial counsel did not object to the question, and further questioned the officer regarding both appellant's pre-and post-arrest silence during his cross-examination of the detective. According to the record, the following transpired during this cross-examination:

{¶63} "Defense: Now you said * * * Mr. Darrah called you back and said he had spoken with an attorney?

{¶64} "Witness: I believe it was roughly an hour.

{¶65} "Q: Okay. And was there any further explanation from you or discussion from you regarding this?

{¶66} "A: Other than that I had received a complaint from Alice [T.].

{¶67} "Q: Okay. And I believe you indicated that you told him you would have no further contact and the next time would be more of a formal nature, something to that effect?

{¶68} "A: I believe I told him that the next contact would be if there [were] any criminal charges.

{¶69} "Q: Okay. And the next contact would have been March 27th?

{¶70} "A: That's correct.

{¶71} "Q: And that's when you physically arrested [appellant]?

15

{¶72} "A: That's correct.

{¶73} "Q: Okay. Do you recall if he was presented a copy of the indictment at the time or later on at the sheriff's department?

{¶74} "A: I believe it was at the booking area in the jail.

{¶75} "Q: Okay. Now do you recall where you arrested [appellant]?

{¶76} "A: It was at his place of employment.

{¶77} "Q: Was that locally[?]

{¶78} "A: Yes. It was in Mason, I believe.

{¶79} "* * *

{¶80} "Q: And on the ride from Mason to the sheriff's department, was there any discussion; [did appellant] make any inquiries of what this was about?

{¶81} "A: I don't believe so.

{¶82} "Q: Okay. * * * I'm assuming you read his rights to him?

{¶83} "A: There was no reason to read his rights to him, [because] I was not going to question him.

{¶84} "Q: Okay. At some point in time did you make any explanation of what the nature of the charge was?

{¶85} "A: I don't believe so. I believe we gave him a copy of the indictment at the jail and told him that's what the charges were.

{¶86} "Q: Okay. But to the best of your recollection, you didn't present him a copy of the indictment when you arrested him?

{¶87} "A: No. I believe the indictment, the physical copy, was given to him at the jail."

{¶88} Then, on the state's redirect examination of the detective, the following transpired:

{¶89} "Prosecutor: [D]id it strike you as unusual that [appellant] never asked you what the nature of the offense or the specific acts were?

16

{¶90} "Witness: Yes, ma'am."

{¶91} In isolation, it would seem that the state improperly commented on appellant's post-arrest, silence. However, it was appellant who first raised the issue as to his reaction to the allegations during his direct examination. Moreover, the state did not belabor the issue of appellant's post-arrest silence when the issue first arose, and trial counsel could have objected to the question. See *State v. King*, Lake App. No.2003-L-177, 2005-Ohio-4656. In fact, the testimony that appellant claims is most damaging was made during the state's redirect examination of the detective, after trial counsel elaborated on appellant's post-arrest silence during cross-examination. Therefore, appellant cannot show that he was prejudiced by the state's initial questioning on appellant's post-arrest silence. Accordingly, we find that appellant has failed to demonstrate that there was a reasonable probability of success had appellate counsel presented this on appeal.

{¶92} Next, appellant argues that references to appellant's post-indictment silence at trial violated his Sixth Amendment right-to-counsel. Likewise, we find that appellant has failed to demonstrate that there was a reasonable probability of success had appellate counsel presented this on appeal based on the above analysis.

{¶93} Further, we note that appellant has not, on his direct appeal or on reopening, specifically argued that his trial counsel was ineffective for failing to object to the state's initial question regarding his post-arrest, post-indictment silence. To the extent that appellant has impliedly argued that trial counsel's performance was deficient, we find that trial counsel's failure to object and subsequent cross-examination of the detective were deliberate trial tactics. Trial counsel's tactics included an attempt to mitigate the impeachment of appellant's testimony and to reiterate appellant's theory that he was innocent and surprised by the allegations. While these tactics ultimately were unsuccessful, we remind appellant that even debatable trial tactics do not constitute ineffective assistance of counsel. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815.

{¶94} Appellant's assignment of error is overruled.

{¶95} Judgment affirmed.

(Doc. 8, Ex. 20).

Upon review of the entire record, the Court finds that petitioner has failed to demonstrate

that the Ohio appellate court's decision is contrary to or an unreasonable application of clearly

established federal law, or based on an unreasonable determination of the facts as to justify federal habeas corpus relief. *See Williams v. Taylor*, 529 U.S. 362 (2000); 28 U.S.C. § 2254(d). The Ohio Court of Appeals correctly identified *Strickland* as the controlling Supreme Court precedent and reasonably concluded that petitioner failed to establish ineffective assistance of counsel claims for either trial or appellate counsel. More specifically, the appellate court determined that the state's initial reference to petitioner's post-arrest silence was offered in order to impeach petitioner's testimony and to challenge the defense's theory that petitioner's shock and surprise over the allegations demonstrated his innocence. The court found that trial counsel was not deficient because "trial counsel's failure to object and subsequent cross-examination of the detective were deliberate trial tactics." (Doc. 8, Ex. 20, p. 10). Furthermore, the court reasonably concluded that petitioner was not prejudiced by appellate counsel's failure to challenge references to petitioner's post-arrest, pre-*Miranda* silence because petitioner failed to demonstrate a reasonable probability of success had the alleged error been raised on appeal. In support of this conclusion, the undersigned will address petitioner's claims in reverse order.

## A. Ground Two is without merit because the Ohio Court of Appeals' decision did not involve an unreasonable determination of the facts.

In Ground Two, petitioner contends that the Ohio Court of Appeals' determination that the state's use of petitioner's post-arrest, pre-*Miranda* silence was used for impeachment was an unreasonable determination of the facts in light of the state court record. (Doc. 1, p. 2); (*see also* Doc. 12, pp. 9-11). Petitioner acknowledges that his testimony could be impeached by reference to his silence in limited circumstances; however, he argues that Detective Engelhardt's testimony went beyond impeachment and the state impermissibly used his silence as substantive evidence of guilt. (Doc. 12, p. 9).

A defendant's decision to remain silent generally cannot be used against him as substantive evidence of guilt. *Hall v. Vasbinder*, 563 F.3d 222, 232 (6th Cir. 2009) (citing *Griffin v. California*, 380 U.S. 609, 615 (1965)). However, under Supreme Court precedent it is permissible for a prosecutor to reference a defendant's pre-*Miranda* silence in order to impeach his credibility. *See Jenkins v. Anderson*, 447 U.S. 231, 238, 240 (1980) (holding that neither the Fifth Amendment nor Due Process is violated by use of pre-arrest, pre-*Miranda* silence to impeach credibility); *Fletcher v. Weir*, 455 U.S. 603, 607 (1982) (ruling that post-arrest, pre-*Miranda* silence used for impeachment does not violate the Due Process Clause). *Cf. Doyle v. Ohio*, 426 U.S. 610, 611 (1976) (finding that impeachment with post-*Miranda* silence violates the Due Process Clause). As the Court noted in *Jenkins*, "impeachment follows the defendant's own decision to cast aside his cloak of silence and advances the truth-finding function of the criminal trial." *Jenkins*, 447 U.S. at 238. "Once a defendant takes the stand, he is subject to cross-examination impeaching his credibility just like any other witness." *Portuondo v. Agard*, 529 U.S. 61, 70 (2000) (internal quotation marks and citations omitted). "[A] prosecutor can refer to a defendant's silence if doing so would be a fair reply to a defense theory or argument." *Vasbinder,* 563 F.3d at 233 (citing *U.S. v. Robinson*, 485 U.S. 25, 34 (1988)).

Though the Supreme Court has not ruled on the legitimacy of using pre-*Miranda* silence as substantive evidence of guilt, *see Vasbinder*, 563 F.3d at 232; *Combs v. Coyle*, 205 F.3d 269, 282 (6th Cir. 2000), under Ohio Supreme Court and Sixth Circuit precedent the substantive use of pre-*Miranda* silence violates the Fifth Amendment. *See State v. Leach*, 807 N.E.2d 335, 339 (Ohio 2004); *Combs*, 205 F.3d at 283.

In the instant case, Detective Engelhardt's testimony included two separate references to petitioner's post-arrest silence.[3] The first occurred on direct examination and concerned whether Detective Engelhardt discussed the specifics of the offense with the petitioner on the date of arrest:

> Q. Do you recall, on that date, did you talk to him about the specifics of the offense?
>
> A. No, ma'am. I had no conversation with him other than processing him into the jail. There was no discussion of the case at all.
>
> Q. He didn't say, "Who is this about; I have no idea what this is about?"
>
> A. No, ma'am.
>
> Q. Nothing?
>
> A. (Shaking head negatively).

(Doc. 8, Tr. 275). The second reference was made during the redirect examination of Detective Engelhardt and included the following exchange:

> Q. Okay. And did it strike you as unusual that Mr. Darrah never asked you what the nature of the offense or specific acts were?
>
> A. Yes, ma'am.

(Doc. 8, Tr. 281).

Upon review of the state court record, the Court finds that the Ohio appellate court's determination that the state's initial reference to petitioner's post-arrest silence was used for impeachment purposes did not involve an unreasonable determination of the facts. Importantly, the Ohio Court of Appeals did not find that both references to petitioner's silence were offered

---

[3] Though respondent addresses the use of petitioner's pre-arrest silence in the return of writ (Doc. 8, pp. 26-32), petitioner does not contest the use of petitioner's pre-arrest silence. (Doc. 12, p. 17) ("Darrah has never claimed that the state violated a constitutional right to pre-arrest silence.").

for impeachment, as petitioner's habeas petition suggests. With respect to the initial reference to petitioner's silence, the Ohio appellate court noted that the state was permitted to present Detective Engelhardt's rebuttal testimony in response to petitioner's testimony that he was shocked and floored over the allegations and that he first learned of the child's identity upon receiving the indictment at the jail. (Doc. 8, Ex. 20, p. 7). In response to petitioner's argument that Engelhardt's testimony went beyond the scope of impeachment, the court found that trial counsel's failure to object and subsequent cross-examination were deliberate trial tactics and that petitioner was not prejudiced by appellate counsel's failure to raise the alleged error. (Doc. 8, Ex. 20, pp. 8-10). In other words, the Ohio Court of Appeals did not explicitly find that the second reference to petitioner's silence was offered for the purpose of impeachment.

In reaching its decision, the Ohio Court of Appeals first determined that trial counsel's strategy included an attempt to show that petitioner's shock and surprise over the allegations demonstrated his innocence. (*See* Doc. 8, Ex. 20, p. 10). Trial counsel introduced testimony from both petitioner and his wife regarding their initial response to Detective Engelhardt's message. (Doc. 8, Tr. 178, 214-18). Both testified that they did not attach significance to the message because they associated it with petitioner's prior work as a Court Appointed Special Advocate (CASA), where petitioner worked with children. (Doc. 8, Tr. 178-79, 215-16). Petitioner testified that he was shocked and floored upon learning that the call was in reference to criminal allegations against him.[4] Petitioner further testified that he was informed of the nature of the allegations by Detective Engelhardt during an initial phone conversation, after petitioner

---

[4] In describing his reaction to the allegations petitioner testified as follows: "And I mean I was, at that point I was floored. I was shocked. I still didn't know what it was that these criminal allegations were. But, you know, it was like my mind was just obviously going ten million different directions, thinking what this could possibly be." (Doc. 8, Tr. 216-17). "And it is so hard to describe just how floored I was, how shocked I was at that point, that, you know, I was being, you know, accused of something like this. And I was so stunned, I just, I just was like okay." *Id.* at 218.

21

told Engelhardt that "I don't even know what I'm being charged with." *Id.* at 218. Petitioner also indicated that he became aware of the identity of the alleged victim upon being provided with "the paperwork," presumably referring to the indictment. *Id.* at 241. On redirect, petitioner clarified that he learned of the nature of the charges at some point in time between his arrest and being booked in jail. *Id.* at 247.

The prosecutor appears to have been well aware of petitioner's defense tactic. On cross-examination, the state sought to show that petitioner's initial reaction to the phone message and response to the allegations were not believable.[5] Furthermore, the rebuttal testimony of Detective Engelhardt directly contradicted petitioner's testimony as to when he learned of the nature of the allegations and the identity of the alleged victim. Detective Engelhardt testified that he did not give any indication of the nature of the complaint throughout his investigation or on the day of petitioner's arrest. *Id.* at 271-75. He further testified that petitioner never inquired about the nature of the allegations during their phone conversation as petitioner claimed to have done in his direct testimony. *Id.* Detective Engelhardt also indicated that the indictment did not include the victim's identity, suggesting that petitioner could not have discovered the identity of the victim when provided with the indictment, as petitioner had previously testified. *See id.*

The Court finds that the Ohio Court of Appeals determination that Detective Engelhardt's first reference to petitioner's silence was offered to impeach petitioner's credibility was not based on an unreasonable determination of the facts in light of the state court record. The

---

[5] During cross-examination the prosecutor brought out testimony to suggest that petitioner's initial reaction to the phone message was not credible. Petitioner testified that he had worked on only one CASA case, that he had not worked on the case in a year, and that he had never been contacted by a detective before. (Doc. 8, Tr. 233-35). Furthermore, the prosecution challenged the notion that petitioner would have remained unaware of the origin of the allegations. Petitioner testified that following the alleged incident the victim's mother stopped conversing with him, *id.* at 236-37, and the prosecution directly questioned petitioner about it being a shock, inquiring "[i]sn't it fair to say that it didn't matter when you were told because you already knew?" *Id.* at 241.

prosecution stated in open court that "the rebuttal is to go to the contacts with Kevin Darrah that him and his wife have testified to" (Doc. 8, Tr. 267), and the above reference was only part of a series of questions designed to impeach petitioner's testimony with regard to his response to and knowledge of the allegations.[6] By eliciting testimony that petitioner never asked about the specifics of the case and that Detective Engelhardt did not discuss the case with him on the day of his arrest, the prosecution attempted to impeach petitioner's credibility by establishing that petitioner could not have learned of the nature of the allegations or the identity of the victim during this time, as he claimed to have in his direct testimony. *See United States v. Peyton*, 183 F. App'x 539, 548 (6th Cir. 2006) (finding that even if *Miranda* warnings had been given, that no *Doyle* error occurred because "[a] prosecutor's or witness's remarks constitute comment on a defendant's silence if the manifest intent was to comment on the defendant's silence, or in the absence of such intent, if the character of the remark was such that the jury would naturally and necessarily so construe the remark").

Accordingly, the Court finds that the Ohio Court of Appeals reasonably determined that the first reference to petitioner's post-arrest, pre-*Miranda* silence was offered to impeach petitioner's direct testimony and not as substantive evidence of guilt. Therefore, the appellate court's decision is not based on an unreasonable determination of the facts and petitioner is not entitled to habeas relief based on Ground Two of the petition.

---

[6] The prosecution proffered testimony that the detective did not disclose the nature of the allegations or that he was with a child abuse team in his initial message, that he informed petitioner that the complaint had been initiated by the victim's mother, that he did not provide any indication of the nature of the complaint, and that petitioner did not ask what the allegation was about during their initial phone conversations. (Doc. 8, Tr. 271-73). Additionally, Detective Engelhardt testified that on the day of the arrest he did not discuss the case with petitioner on the way to the jail, that the indictment did not include the name of the alleged victim and, the contested reference to petitioner's silence, that petitioner neither asked him about the nature of the allegations nor the identity of the victim on that day. *Id.* at 273-75.

23

**B. Ground One of the petition is without merit because the Ohio Court of Appeals' decision was not contrary to or an unreasonable application of federal law.**

In Ground One, petitioner claims that he received the ineffective assistance of counsel based on trial and appellate counsels' failure to raise the "silence-as-evidence" claim. (*See*, Doc. 1, p. 2; *see also* Doc. 12). As noted previously, petitioner appears to raise three distinct ineffective assistance of counsel claims: ineffective assistance of trial counsel, ineffective assistance of appellate counsel for failure to raise trial counsel's alleged ineffectiveness, and ineffective assistance of appellate counsel for failure to raise the underlying claim pertaining to the substantive use of petitioner's post-arrest, pre-*Miranda* silence.

In addressing petitioner's Second Ground for relief, the Court has already determined that the Ohio Court of Appeals reasonably determined that Detective Engelhardt's first reference to petitioner's silence was offered for the purposes of impeachment. Because the use of post-arrest, pre-*Miranda* silence for impeachment presents no constitutional issue under both Ohio and federal law, *see Leach*, 807 N.E.2d at 339; *Weir*, 455 U.S. at 607, petitioner cannot establish that trial or appellate counsel rendered ineffective assistance based on their failure to challenge the alleged error concerning this first reference. *See Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) ("if the underlying substantive claims have no merit, the applicant cannot demonstrate that counsel was ineffective for failing to raise those claims on appeal"); *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) ("appellate counsel cannot be ineffective for failure to raise an issue that lacks merit") (citation omitted); *Alder v. Burt*, 240 F. Supp.2d 651, 670 (E.D. Mich. 2003) ("Failing to present meritless objections at trial or meritless claims on appeal is not ineffective assistance of counsel.") (citing *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999)).

Accordingly, the Court's discussion of petitioner's ineffective assistance of counsel claims will focus solely on the second reference made in the redirect examination.

### i. *Trial Counsel*

With regard to trial counsel, the Court finds that the Ohio Court of Appeals' decision was not an unreasonable application of federal law or based on an unreasonable determination of the facts in light of the state court record. In addressing the merits of petitioner's claim, the Ohio appellate court found that trial counsel did not provide constitutionally deficient performance because "trial counsel's failure to object and subsequent cross-examination of the detective were deliberate trial tactics. Trial counsel's tactics included an attempt to mitigate the impeachment of appellant's testimony and to reiterate appellant's theory that he was innocent and surprised by the allegations." (Doc. 8, Ex. 20, p. 10).

Under *Strickland*, "counsel's tactical decisions are particularly difficult to attack." *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). Judicial scrutiny of counsel's performance must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from counsel's perspective at the time the conduct occurred. *Strickland*, 466 U.S. at 689. Disagreement by a defendant with tactics and/or strategy will not support a claim of ineffective assistance, and a petitioner in habeas corpus "must overcome the presumption that, under the circumstances, the challenged conduct might be considered sound trial strategy." *Id.*

In *Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, (2011), the Supreme Court specified the role of federal district courts in reviewing ineffective assistance claims decided on the merits in state courts. "Under §2254(d), a habeas court must determine what arguments or theories supported . . . the state court's decision; and then it must ask whether it is possible fair-minded

jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington,* 131 S.Ct. at 786. "[Section 2254(d)] preserves authority to issue the writ in cases where there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with this Court's precedents." *Id.* "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 785. "The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Id.* at 788. (internal quotations marks and citations omitted).

After review of the record in this case, the Court finds that petitioner has not demonstrated that the Ohio Court of Appeals' decision is contrary to or an unreasonable application of Supreme Court precedent as to justify federal habeas corpus relief. As the Court noted in review of petitioner's claim in Ground Two of the petition, the Ohio appellate court reasonably determined that trial counsel's strategy included emphasizing petitioner's response to the allegations in order to suggest that his shock and surprise demonstrated his innocence.[7] After petitioner was effectively cross-examined regarding his reaction to the allegations and faced with Detective Engelhardt's rebuttal testimony, trial counsel was forced to make tough decisions as to whether to object to the testimony referencing petitioner's silence and whether to

---

[7] In closing, for example, trial counsel argued that petitioner was suddenly confronted with the allegations and that the charges were inconsistent with petitioner's having no criminal history and prior work with children:

> And you heard Kevin Darrah testify directly on the stand. And there's no refution (sic) in his testimony. Obviously, you can expect that a man that is charged with this serious of an offense would be distraught, would be upset, would be stressed out from going through this event in his life. And did he talk to the detective two weeks, two months, he doesn't know. He knows that suddenly these allegations are presented and he's arrested and taken to jail. You have to ask yourself, is this conduct reasonable for a man who has never had a criminal offense in his life, who has nothing but concern for children, and suddenly he's faced with these allegations?

(Doc. 8, Tr. 327-28).

cross-examine the detective. *See Harrington*, 131 S.Ct. at 789 (noting that *Strickland* requires a reviewing court to "reconstruct the circumstances of counsel's challenged conduct" and "evaluate the conduct from counsel's perspective at the time"). As respondent has argued, because the detective's direct testimony was offered to impeach petitioner's testimony regarding his knowledge of and reaction to the allegations, it is highly unlikely that trial counsel could have successfully objected to the first reference to petitioner's silence. (*See* Doc. 8, pp. 37-38). Trial counsel apparently resolved to attempt to mitigate the impeachment of petitioner's testimony though cross-examination and the Supreme Court has made clear that counsel's decision is entitled to a strong presumption that the decision was made in the exercise of professional judgment. *See Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (citing *Strickland*, 466 U.S. at 690). *See also State v. Pasqualone*, 903 N.E.2d 270, 277 (Ohio 2009) (counsel's decision to cross-examine a particular witness is a matter of trial strategy).

The Court acknowledges that trial counsel could have objected to the second reference to petitioner's silence, as it does not appear to have been offered in order to impeach petitioner's prior testimony. However, even if trial counsel's failure to object was inadvertent, the Ohio Court of Appeals' decision is not an unreasonable application of federal law, as the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough,* 540 U.S. at 8. Petitioner has not advanced any argument that convinces the undersigned that counsel rendered deficient performance at trial or that the Ohio Court of Appeals' decision was otherwise an unreasonable application of the *Strickland* standard.[8] In

---

[8] In support of his ineffective assistance of appellate counsel claim, petitioner did cite to *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000), and *Wiggins v. Smith*, 539 U.S. 510, 521-23 (2003), for the proposition that the relevant question in assessing whether counsel rendered deficient performance is not whether counsel's choices were strategic, but whether the choices were reasonable. (Doc. 12, p. 3). To the extent that this argument also applies to his ineffective assistance of trial counsel claim, the Court finds these cases distinguishable. In both cases, the

27

other words, petitioner has not overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," 466 U.S. at 689, nor demonstrated that "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with this Court's precedents." *Harrington,* 131 S.Ct. at 786.

In any event, even if the Court could find that counsel's failure to object resulted in constitutionally deficient performance, the Court would find that petitioner was not prejudiced in light of the substantial evidence offered against him. The record in this case includes sufficient evidence to reasonably conclude that the alleged error did not alter the outcome of the trial. *See Stewart v. Wolfenbarger,* 468 F.3d 338, 361 (6th Cir. 2006) ("When determining prejudice, the Court must consider the errors of counsel in total, against the totality of the evidence in the case.") (citing *Strickland,* 466 U.S. at 695-96).

At trial, the state presented direct testimony from the victim, who testified that petitioner bit her ear, kissed her on the lips, and stuck his finger inside of her. (Doc. 8, Tr. 82-85). As the trial judge indicated before imposing sentencing on petitioner, "[the victim] very clearly, very succinctly said it was you . . . ." (Doc. 8, Sent. Tr. 11). The victim's mother testified that on the day following the incident her daughter complained that her genitals hurt and that someone named Kevin had touched and hurt her. (Doc. 8, Tr. 123-24). The mother also indicated that "the area around [the victim's] vagina was really, really red and inflamed," with a mark or blood

---

Supreme Court found that mitigation investigations undertaken in death penalty cases were themselves unreasonable, whether or not there was a tactical decision made to present mitigation evidence. The Supreme Court based its conclusion on the "limited principle that strategic choices made after less than complete investigation are reasonable only to the extent that reasonable professional judgments support the limitations on investigation." *Wiggins,* 539 U.S. at 512 (quoting *Strickland* at 690-91) (internal quotation marks omitted). *Cf. Johnson v. Beckstrom,* No. 8-194-ART, 2011 WL 1808334, at *20 (E.D. Ky. May 12, 2011) (refusing to apply *Wiggins* to the non-capital sentencing context). Here, petitioner has not alleged nor is there evidence in the record to suggest that trial counsel was unaware of the applicable legal principles or that counsel made a tactical decision based on an insufficient investigation of the case.

bruise on one side. *Id.* at 124-25. In addition, the state presented the testimony of Dr. Goodlander, who testified that the victim stated that Kevin had hurt her with his fingernail. *Id.* at 52. When asked where she was hurt, the victim pointed to her labia where, upon examination, Dr. Goodlander observed unusual pinpoint redness consistent with an injury caused by a fingernail. *Id.* at 56-58. Finally, as noted previously, petitioner's testimony was effectively challenged on cross-examination and through Detective Engelhardt's rebuttal testimony.

Considering this evidence, as well as the evidence and arguments presented by the defense,[9] the Court cannot find that the above reference to petitioner's silence altered the outcome of the case. The Court finds it highly unlikely that the single reference made in Detective Engelhardt's redirect testimony had an impact on the jury's verdict or tipped the scales in the favor of the prosecution. Accordingly, petitioner is not entitled to habeas relief based on the ineffective assistance of trial counsel as raised in Ground One of the petition.

### ii.    *Appellate Counsel*

In his reopened appeal, petitioner argued that his appellate counsel was ineffective for failure to present two assignments of error. (Doc. 8, Ex. 17). Petitioner argued that appellate counsel was ineffective for failing to challenge the substantive use of petitioner's post-arrest, pre-*Miranda* silence. *Id* at 2. Petitioner also argued that appellate counsel was ineffective for failure to raise trial counsel's ineffectiveness for failure to object to the underlying silence-as-evidence issue. *Id* at 9. The Ohio Court of Appeals ruled on the merits of petitioner's claims, finding them without merit because petitioner "failed to demonstrate that there was a reasonable

---

[9] Petitioner argues that there was not overwhelming evidence of guilt in light of the fact that petitioner disputed the victims testimony, that there were no other witnesses, no inculpatory biological evidence, and that a child-abuse expert from Children's Hospital could not substantiate the abuse. (Doc. 12, p. 18).

probability of success had appellate counsel presented [the claims] on appeal." (Doc. 8, Ex. 20, p. 10).

The Court finds that petitioner has not demonstrated that the Ohio Court of Appeals' adjudication of these claims was contrary to or an unreasonable application of federal law. First, the Court finds petitioner's ineffective assistance of appellate counsel claim regarding trial counsel to be without merit. As detailed above, the Court has already found that the Ohio Court of Appeals reasonably determined that trial counsel did not render deficient performance. Because the Ohio appellate court found the underlying trial counsel claim to be without merit, the court also reasonably determined that petitioner was not prejudiced by appellate counsel's failure to raise the meritless claim. *See Davie*, 547 F.3d at 312; *Willis*, 351 F.3d at 745. In other words, petitioner cannot demonstrate a reasonable probability of success had appellate counsel raised the ineffective assistance of trial counsel claim on appeal. Accordingly, the Court finds that petitioner has not demonstrated that the Ohio Court of Appeals' decision was contrary to or an unreasonable application of Supreme Court precedent as to warrant habeas relief with regard to this claim.

The Court also finds that petitioner's ineffective assistance of appellate counsel for failure to challenge the silence-as-evidence issue on appeal is without merit. Petitioner contends that "appellate counsel was deficient in failing to litigate the silence-as-evidence issue, and by raising weaker, less significant state-law issues." (Doc. 12, p. 5) (citing *Mapes v. Tate*, 388 F.3d 187, 191 (6th Cir. 2004)). He further asserts that he was prejudiced by appellate counsel's performance and argues that there was a reasonable probability of a different result if counsel had raised the claim on appeal. (*See* Doc. 12, p. 15).

Petitioner first argues that "[i]n adjudicating the performance prong of Darrah's ineffective assistance claim, the state court held that Darrah's ***trial counsel*** employed 'deliberate trial tactics' by failing to litigate the state's use of Darrah's post-arrest, post-indictment silence as evidence." (Doc. 12, p. 2) (emphasis in original). He contends that the Ohio Court of Appeals altered and misapplied *Strickland*'s deficient performance prong by focusing on trial counsel's performance, rather than that of appellate counsel. In support of this claim, petitioner cites to *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000), and *Wiggins v. Smith*, 539 U.S. 510, 521-23 (2003), for the proposition that the relevant question in assessing whether counsel rendered deficient performance is not whether counsel's choices were strategic, but whether the choices were reasonable. (Doc. 12, p. 3). Petitioner contends that by focusing on trial counsel's strategy, the state court failed to identify the objective reasonableness of appellate counsel's failure to raise the alleged error. *Id.* at 3-4.

The Court finds petitioner's arguments unpersuasive. First, contrary to petitioner's claim that the Ohio Court of Appeals failed to identify objective reasonableness as the applicable legal standard, the Ohio court correctly identified the *Strickland* standard and explicitly noted that "we must determine whether counsel's actions fell below an *objective standard of reasonableness*." (Doc. 8, Ex. 20, p. 2) (emphasis added). In addition, the Ohio Court of Appeals did not address the deficient performance prong of the *Strickland* test in its analysis of petitioner's ineffective assistance of appellate counsel claims. As the Supreme Court held in *Strickland*, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies" and a court can dispose of the claim upon an insufficient showing on either prong. *Strickland*, 466 U.S. at 697. In this case, the Ohio Court of Appeals based its decision on petitioner's failure to demonstrate that he was

31

prejudiced by appellate counsel not raising the alleged error on appeal. (*See* Doc. 8, Ex. 20, p. 10). The discussion of trial counsel's strategy was raised later in the opinion and pertained to the state court's adjudication of petitioner's ineffectiveness of trial counsel claim. *Id.* ("To the extent that appellant has impliedly argued that trial counsel's performance was deficient, we find that trial counsel's failure to object and subsequent cross-examination of the detective were deliberate trial tactics."). The Court, therefore, finds that petitioner's arguments regarding the deficient performance prong are not relevant to its determination of whether the Ohio Court of Appeals' decision regarding appellate counsel was contrary to or an unreasonable application of federal law as to justify habeas relief.[10]

With regard to the prejudice prong of the *Strickland* analysis, petitioner argues that the Ohio Court of Appeals "cited the proper prejudice standard, but failed to conceptualize its proper application." (Doc. 12, p. 8). Petitioner claims that the Ohio appellate court relied on irrelevant factors in finding that petitioner failed to demonstrate a reasonable probability of a different

---

[10] In arguing that appellate counsel raised weaker issues on appeal, petitioner argues that in the 12th District Ohio Court of Appeals "it is structural error for the trier-of-fact to consider a defendant's silence as evidence of guilt, requiring reversal." (Doc. 12, p. 6) (citing *In re K.B.*, No. CA2006-02-077, 2007 WL 1041427, at *3 (Ohio App. 12 Dist. Apr. 9, 2007)). Petitioner also argues that the *In re K.B.* decision demonstrates a reasonable probability of success on appeal under the prejudice prong of the *Strickland* analysis. (Doc. 12, p. 15).

The undersigned finds petitioner's argument unavailing because *In re K.B.* is factually and legally distinguishable. The appellate court in *In re K.B.* recognized that generally an improper reference to a defendant's failure to testify is not a structural error, but is subject to a harmless error analysis. *In re K.B.*, 2007 WL 1041427, at *4 (citing *U.S. v. Hasting*, 461 U.S. 499, 509-10 (1983); *State v. Farwell*, No. CA2001-03-041, 2002 WL 649387, at *10 (Ohio App. 12 Dist. April 22, 2002)). The trial judge in *In re K.B.* was the trier-of-fact who "made multiple, specific references to appellant's failure to testify" at the trial and "indicated that appellant's silence was 'critical'" to the finding of guilt. *In re K.B.*, 2007 WL 1041427, at *4. The Ohio Court of Appeals determined that the trial judge effectively shifted the burden of proof from the State to the appellant by "requiring the appellant to explain his conduct." *Id.* at 3. The appellate court determined that "under the narrow circumstances of this case," the trial judge's overt and explicit reliance on the appellant's failure to testify at trial affected the standard of proof employed by the trier-of-fact and amounted to a structural error that required a reversal of the conviction.

In the instant habeas case, there is no indication that the trier-of-fact was subjected to multiple, specific references to petitioner's silence or that such instances of silence were "critical" to the guilty finding in this case. *In re K.B.* does not direct a finding of a structural error in this case.

outcome on appeal. *Id.* at 8-9. First, petitioner argues that the Ohio Court of Appeals improperly relied on the fact that petitioner first raised his reaction to the allegations during direct examination because, according to petitioner, his direct testimony during trial concerned only his emotional response to the allegations and his post-arrest silence remained within the scope of his Fifth Amendment privilege and could not be used for impeachment. *Id.* at 9-10. Second, he argues that the fact that "the state did not belabor the issue of appellant's post-arrest silence when it first arose" is irrelevant, as a violation of the Fifth Amendment turns not on whether his silence was belabored, but on whether or not the prosecution used his silence as evidence of guilt. *Id.* at 11. Third, petitioner contends that the trial court improperly focused on trial counsel's failure to object. Petitioner argues that in doing so "the state court diverted itself from evaluating the error's effect on the outcome, and made the error itself dispositive." *Id.* at 12. Finally, petitioner argues that trial counsel's failure to object to the first reference to his silence and subsequent elaboration on petitioner's silence during cross-examination of the detective does not forfeit the prejudice inquiry with regard to the second comment on petitioner's silence. *Id.* at 13-14.

After careful consideration of the arguments presented by petitioner, the Court finds that he has failed to demonstrate that the Ohio Court of Appeals' decision was an unreasonable application of the *Strickland* standard. The Court is not persuaded by petitioner's argument that his direct testimony was confined to his emotional reaction to the criminal allegations against him or that the fact that the state did not belabor the issue of his post-arrest silence when the issue first arose was improperly considered in adjudicating his claims. Although petitioner did testify about his emotional response to the allegations, he also testified about when he learned of the nature of the allegations and the identity of the victim. As noted previously, Detective

33

Engelhardt's testimony directly contradicted petitioner's testimony on these matters and the Ohio Court of Appeals reasonably determined that the first reference to petitioner's silence was properly offered for impeachment. The fact that the state did not belabor his silence when it was initially raised bolsters the appellate court's determination that the prosecution did not reference his silence as substantive evidence of guilt. In other words, the state appellate court did not add a belaboring rule to the analysis, as petitioner argues, but instead reasonably determined that the initial reference to petitioner's post-arrest silence was properly confined to impeachment.

Petitioner's remaining arguments are also unpersuasive. Petitioner argues that the Ohio Court of Appeals impermissibly relied on the fact that trial counsel could have objected to the first reference to petitioner's silence and that "the testimony that appellant claims is most damaging was made during the state's redirect examination of the detective, after trial counsel elaborated on appellant's post-arrest silence during cross-examination." (Doc. 8, Ex. 20, p. 10). In reaching its decision, the appellate court cited to *State v. King*, No. 2003-L-177, 2005 WL 2133719, at \*1 (Ohio App. 11 Sept. 2, 2005), an Ohio appellate court case noting that "a single comment by a police officer regarding a suspect's silence, without any suggestion that the jury could infer guilt from the silence, is harmless error." *Id.* at \*4. As detailed above, the Ohio Court of Appeals determined that trial counsel employed a tactical decision not to object to the initial reference to petitioner's silence and to cross-examine the detective in order to mitigate the impeachment of petitioner's testimony. *Id.* However, the state court's identification of trial counsel's strategy did not forfeit the prejudice inquiry with regard to the second reference to petitioner's silence, as petitioner argues. Because the first reference to petitioner's silence was offered for impeachment purposes and was not objected to by trial counsel pursuant to counsel's strategy, the Ohio Court of Appeals reasonably determined that the second reference to

34

petitioner's silence alone did not result in prejudice. The fact that trial counsel elaborated on petitioner's post-arrest silence in cross-examining Detective Engelhardt prior to the second reference lends further support to the Ohio Court of Appeals' determination that petitioner failed to demonstrate that the alleged error was prejudicial. Based on the appellate court's determination that the underlying silence-as-evidence claim did not result in prejudice, the Ohio Court of Appeals reasonably found that petitioner failed to demonstrate a reasonable probability of success if appellate counsel had raised the alleged error on appeal.

The Court finds that petitioner has failed to demonstrate that the Ohio Court of Appeals' decision regarding petitioner's ineffective assistance of appellate counsel claims was an unreasonable application of the *Strickland* standard. After review of the record in this case and the arguments advanced by petitioner, the undersigned is convinced that the alleged errors did not alter the outcome of petitioner's trial or appeal or otherwise undermine confidence in the outcome of these proceedings. Accordingly, petitioner is not entitled to relief based on the claims asserted in Ground One of his habeas petition.

Accordingly, in sum, the Court finds that petitioner has failed to demonstrate that the Ohio Court of Appeals' decision was an unreasonable application of federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Therefore, it is **RECOMMENDED** that petitioner's petition for a writ of habeas corpus (Doc. 1) be **DENIED** with prejudice.

### IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1)

be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims alleged in the petition, which have been addressed on the merits herein, because petitioner has not stated a "viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)). *See also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 1/6/2012

Karen L. Litkovitz
United States Magistrate Judge

36

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

KEVIN DARRAH,
Petitioner,

Case No. 1:09-cv-906

vs.

Dlott, C.J.
Litkovitz, M.J.

WARDEN, MADISON
CORRECTIONAL INSTITUTION,
Respondent.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).